650 S.E.2d 490

**The STATE, Respondent,**

v.

**Tony S. BENNETT, Appellant.**

**No. 4287.**

Court of Appeals of South Carolina.

Heard Feb. 6, 2007.

Decided Aug. 14, 2007.

Aug. 14, 2007.

---

**2.** We decide this case without oral argument pursuant to Rule 215, SCACR.

Appellate Defender Aileen P. Clare, of Columbia, for Appellant.

John Benjamin Aplin, of Columbia, for Respondent.

HUFF, J.

Tony S. Bennett appeals his Community Supervision Program (CSP) revocation on the grounds: (1) he was charged, convicted, and sentenced as a first offender and thereby not required to participate in CSP; and (2) the trial court erred in holding he was required to challenge his sentence through a timely post-conviction relief (PCR) application. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

Bennett was indicted for distribution of crack cocaine on April 12, 1999, and pled guilty, *pro se,* to the charge on July 14, 1999. He was sentenced to four years imprisonment and given credit for roughly six months served. Bennett did not appeal his conviction or sentence. On June 14, 2002, after serving eighty-five percent of his term, approximately three years, four months and twenty-three days, Bennett was released and entered South Carolina Department of Probation, Parole and Pardon Services' (DPPP) CSP.

On March 27, 2003, Bennett was charged with violating the conditions of his CSP. At a CSP revocation hearing the court

found Bennett violated his CSP, revoked it, and imposed a sentence of eleven months and ten days. Bennett did not appeal his revocation. On February 24, 2004, after satisfying his first CSP revocation, Bennett was released and entered CSP. On April 4, 2005, Bennett was again charged with violating conditions of his CSP. At the CSP violation hearing, Bennett did not contest the alleged violations of his CSP, but rather challenged the classification of his original sentence and placement in CSP.

Bennett's arrest warrant and indictment specify that he was charged with "Distribution of Crack Cocaine" in violation of S.C.Code § 44–53–375(B)(1). At the time of Bennett's indictment § 44–53–375(B)(1) (Supp.1998) [1] read, in part:

(B) A person who manufactures, distributes, dispenses . . . ice, crank or crack cocaine, in violation of Section 44–53–370, is guilty of a felony and, upon conviction:

(1) for a *first offense*, must be sentenced to a term of imprisonment of not more than fifteen years . . .

*Id.* (emphasis added). In addition, the arrest warrant lists the Criminal Docket Report (CDR) Code, or Offense Code, # 0112. CDR Code # 0112 indicates a first offense, "Drugs/ Manufacture, distribution, etc., ice, crank, crack cocaine—1st offense." The indictment cover lists a different CDR Code, # 0107, indicating a Class E felony,[2] "Drugs / Distribute, sell, purchase, manuf. drug other than crack cocaine, or pwid, near school."

Bennett's sentencing sheet indicates that he pled to and was convicted of "Distribution of Crack Cocaine in violation of § 44–53–375(B)(1) of the S.C.Code of Laws, bearing CDR Code # 0113." While Section 44–53–375(B)(1) indicates a first offense, CDR Code # 0113 indicates a second offense, "Drugs / Manufacture, distribution, etc., ice, crank, crack cocaine—2nd

---

1. This version of the statute was produced in the 2002 bounded edition, S.C.Code § 44–53–375(B)(1) (2002), and has since been amended by 2005 Act No. 127, eff. June 7, 2005, found in S.C.Code § 44–53–375(B)(1) (Supp.2006).

2. A Class E felony is a parolable offense and thereby not restricted by S.C.Code § 24–13–100 which prohibits the parole or early release, including CSP, for prisoners convicted of a Class A, B, or C Felony until they have served 85 percent of their sentences.

offense." There is no record of the original sentencing hearing.

At his second CSP revocation hearing, Bennett argued that he was originally sentenced as a first offender and thereby not required to participate in CSP. He averred that the ambiguity between the statute and CDR code appearing on his sentencing sheet should be construed as a scrivener's error to be resolved in his favor. The State asserted Bennett was a second offender and that if Bennett believed he had received "a wrong sentence or wrong time" he should have challenged his sentence in a timely PCR application. Thus, the State argued because Bennett did not raise his claim within a year of his sentence he was beyond the statutory period wherein he could have filed such claim. Additionally, the State contended that Bennett's failure to raise this argument in his first CSP violation hearing was a waiver of his right to raise the claim in the current CSP violation hearing.

Ultimately, the court agreed with the State finding Bennett should have filed a PCR application and was thereby "well beyond the statutory period wherein he could file [his claim]." The court then adopted the State's recommendation to find Bennett in violation of his CSP,[3] revoked it and sentenced him to one year imprisonment. This appeal follows.

## DISCUSSION

### I.

Rather than determine whether Bennett was sentenced as a first offender or second offender, the CSP revocation judge held Bennett was required to challenge his sentence through a timely PCR application. The judge found, "that now is not the time or the place to bring up these arguments that should have been made, at a substantial period of time prior to now, in a PCR application." On appeal, Bennett argues "the lower court committed an error of law by ruling that appellant should have challenged his sentence through a timely application for post-conviction relief (PCR)," citing *Al–Shabazz v. State,* 338 S.C. 354, 527 S.E.2d 742 (2000). We agree.

---

3. Bennett did not contest the alleged violations of his CSP at his hearing or on appeal.

In *Al–Shabazz v. State* the supreme court explained, in depth, the process by which PCR applicants and inmates raise certain types of claims. 338 S.C. 354, 527 S.E.2d 742 (2000). The court made a distinction between the process for claims attacking the validity of a conviction or sentence and claims seeking review of non-collateral or administrative matters. The court elucidated:

> PCR is a proper avenue of relief *only when the applicant mounts a collateral attack challenging the validity of his conviction or sentence* as authorized by Section 17–27–20(a).[4] ...

> The only exceptions to our holding are two non-collateral matters specifically listed in Section 17–27–20(a)(5): the claim that an applicant's sentence has expired and the claim that an applicant's probation, parole, or conditional release has been unlawfully revoked. Under the approach we outline today, these claims are non-collateral matters because neither constitutes a challenge to the validity of the underlying conviction or sentence ...

> We hold that these two claims, because they are specifically listed in the PCR Act, may be raised in PCR or as a non-collateral matter in the manner outlined below ...

---

4. S.C.Code Ann. § 17–27–20(a) (2003) states:

    Any person who has been convicted of, or sentenced for, a crime and who claims:

    (1) That the conviction or the sentence was in violation of the Constitution of the United States or the Constitution or laws of this State;

    (2) That the court was without jurisdiction to impose sentence;

    (3) That the sentence exceeds the maximum authorized by law;

    (4) That there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;

    (5) That his sentence has expired, his probation, parole or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint; or

    (6) That the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or remedy; may institute, without paying a filing fee, a proceeding under this chapter to secure relief. *Provided, however,* that this section shall not be construed to permit collateral attack on the ground that the evidence was insufficient to support a conviction.

*Id.* at 367–368, 527 S.E.2d at 749 (emphasis in original). The supreme court continued, explaining the process to be used when an inmate seeks review of a South Carolina Department of Correction's (SCDOC) final decision in a non-collateral or administrative matter.[5] *Id.* at 368–383, 527 S.E.2d at 749–757.

In the instant case, Bennett is not making a collateral attack challenging the validity of his conviction or sentence that would force him to bring his claim under the PCR Act. To the contrary, Bennett is trying to enforce his sentence. Bennett avers he was appropriately sentenced under § 44–53–375(B)(1), as a first offender and now is wrongly being classified and treated as a second offender. Because Bennett raises a non-collateral matter, whether it falls within the ambit of § 17–27–20(a)(5) or is another form of non-collateral relief, *Al–Shabazz* clearly allows for the matter to be raised in either a PCR and/or as a non-collateral matter in the manner outlined in *Al–Shabazz*. Thus, *Al–Shabazz* provides an avenue of relief for Bennett to challenge the classification of his original sentence other than through PCR. Although we believe Bennett is entitled to a review of his claim pursuant to *Al–Shabazz*, we address it now because we find Bennett was sentenced as a first offender and has exceeded his original sentence, as further discussed, and thus he should not be forced to pursue and await the outcome of such a claim. *See State v. Johnston*, 333 S.C. 459, 463–64, 510 S.E.2d 423, 425 (1999) (addressing defendant's claim rather than requiring her to pursue a remedy through PCR finding she already served the duration of her sentence and faced the threat of continued incarceration beyond the legal sentence due to the additional time it would take to pursue such a remedy).

## II.

Bennett contends he was sentenced as a first offender and should not be subject to CSP. His sentencing sheet lists a statute indicating he was sentenced as a first offender and a CDR code indicating he was sentenced as a second offender.

---

5. Two administrative matters the court cites as typically arising are: 1) when an inmate is disciplined and punishment is imposed and 2) when an inmate believes prison officials have erroneously calculated his sentence, sentence-related credits, or custody status. *Al–Shabazz v. State*, 338 S.C. 354, 370, 527 S.E.2d 742, 750 (2000).

As a first offender Bennett would have been eligible for parole. As a second offender Bennett was not eligible for parole but after serving 85 percent of his sentence was required to participate in CSP.

Under S.C.Code Ann. § 24–21–560(A), participation in CSP is a mandatory condition of release for most no-parole offenses. DPPP sets the initial length of CSP, not to exceed two continuous years, as well as the terms and conditions of CSP, and determines whether violations have occurred. S.C.Code Ann. § 24–21–560(B) (2002); see also State v. Mills, 360 S.C. 621, 625, 602 S.E.2d 750, 752 (2004) (Pleicones, J., dissenting opinion) (discussing CSP). If DPPP determines a CSP violation has occurred, it must initiate a revocation proceeding during which a circuit court judge determines whether a prisoner has willfully violated the terms of his CSP. The judge may impose other terms or conditions and continue CSP or revoke CSP and impose a sentence up to one year. If a prisoner's CSP is revoked and the court imposes a sentence, the prisoner must also complete a CSP of up to two years when he is released. For a successive revocation, the prisoner may be sentenced for up to one year for the violation, with the limitation that the total time imposed for successive revocations cannot exceed the length of time of the prisoner's original sentence.

The supreme court addressed this statute in State v. Mills, reinforcing that a prisoner may serve an amount equal to the original sentence for CSP violations. In Mills, Appellant was originally sentenced to six months. He served five months and two days of the original sentence and was released into CSP which was to continue for two years. Appellant's CSP was revoked and he served three weeks in prison for the CSP violations. Appellant's CSP was revoked for a second time and he was sentenced to five months and seven days. Appellant appealed this second revocation, claiming that the length of imprisonment for CSP violations could not exceed the remaining length of time left on his original sentence of six months. Since Appellant served five months and two days of his original sentence in addition to three weeks from his first CSP revocation, he argued his second revocation could not exceed five days. The supreme court disagreed and upheld the second CSP revocation sentence, explaining that the stat-

ute provides that sentences for successive CSP revocations may total the time of the original sentence.

■ In this case, Bennett was originally sentenced to four years and after serving approximately three years, four months and twenty three days, he was released into CSP. Bennett was to serve two years on CSP, but after eleven months and two days his CSP was revoked and he was sentenced to eleven months and ten days imprisonment for the CSP violation. After serving his first CSP revocation he was again released into CSP. After roughly one year and five months Bennett's CSP was revoked for a second time and he was sentenced to one year imprisonment for his CSP violations. After serving one year on his second CSP revocation, Bennett was again released into CSP.[6] According to the statute and *Mills*, Bennett still has roughly two years and twenty days which he can serve for CSP violations. Therefore, if Bennett were to violate the terms of his CSP for a third time he would again be subject to imprisonment for up to one year. Once released into CSP for a fourth time, Bennett could serve up to one additional year if he were to violate his CSP and have it revoked. And still, once release into CSP for a fifth time, if he were to violate the terms of his CSP, he would be subject to twenty more days in prison.

Bennett's placement and participation in CSP is a result of being treated as a second offender, as indicated by the CDR code on his sentencing sheet. Bennett's argument that he was a first offender rests in that the statute on the sentencing sheet indicates he is a first offender and that the statute should control, not the CDR code.

Essential to a determination on Bennett's claim is an understanding of CDR codes and how they are utilized in the overall judicial process. CDR codes are four digit numerical codes which represent the criminal offenses created by the South Carolina General Assembly and common law. *See* South

---

6. Bennett has served roughly five years, four months, and three days in prison, of which time one year, eleven months, and ten days were.for his CSP violations. Additionally, Bennett has served roughly two years, four months, and two days under CSP. The total time Bennett has been under the State's control since his original four year sentence is seven years, four months, and three days.

Carolina Judicial Department, CDR Codes Frequently Asked Questions, http://www.sccourts.org/cdr/userInstructions.htm. The codes were developed in the late 1970's in a collaborative effort between the South Carolina Justice Department (SCJD), DPPP, and SCDOC. They were created at a time when computer systems had limited memory and did not have the capacity to maintain references to specific statutes which could contain many digits.[7] *Id.* The shorter CDR codes saved computer space and provided a consistent administrative shortcut to be used by all three departments. *Id.* The code developers started with a list of statutory criminal offenses and assigned each a number. As laws change and new offenses are created, the codes are updated. The master list of CDR codes is now maintained by the SCJD which monitors the legislative process to determine required changes and corrects errors in the codes.

While the codes were developed and are used to provide an administrative shortcut, they were never intended to replace statutory law. *Id.* The codes are normally listed after the statute on all warrants, indictments, and sentencing sheets. As the SCJD's website explains, the elements of a crime, its penalties and other related matters are governed by the Code of Laws and the common law alone. *Id.* Any errors in a CDR code do not affect the crime, its characterization as violent or non-violent, for example, or even if someone can be prosecuted for a crime. *Id.* The website further states in a disclaimer, "[t]he South Carolina Code of Laws is the controlling authority for classifications, definitions and penalties for criminal offenses, and **the statute itself should always be consulted.**" *Id.* (emphasis added); *see also* South Carolina Judicial Department, CDR Codes, http://www.sccourts.org/cdr/index.cfm.

On appeal, at oral argument, the State agreed that Bennett's sentencing sheet was filled out incorrectly and that either the CDR code or the statute could have been a mistake.

---

7. The abbreviation, CDR, stood for "Criminal Docket Report," indicating the paper docket sheets maintained by criminal justice agencies. Since that time, paper dockets are no longer maintained. The term has been redefined to mean "Criminal Data Report." South Carolina Judicial Department, CDR Codes Frequently Asked Questions, http://www.sccourts.org/cdr/userInstructions.htm. The Codes are also called "offense codes". *Id.*

The State also acknowledged that someone had to make a decision between the statute and CDR code, as to what the judge intended on the sentencing sheet, and it appeared SCDOC made a decision based on the CDR code. Further, the State conceded that the CDR code is an administrative listing of violations.

Because the South Carolina Code of Laws is the controlling authority for classifications, definitions and penalties for criminal offenses, a statute listed on a sentencing sheet, and not a CDR code, will dictate a criminal's sentence. Therefore, we find Bennett was sentenced as a first offender. Bennett's warrant, indictment, and sentencing sheet all list S.C.Code § 44–53–375(B)(1), indicating a first offense. The additional listing of the CDR code on Bennett's sentencing sheet, indicating a second offense, may not trump the listed statute. Due to SCDOC's erroneous interpretation of Bennett's sentencing sheet, Bennett has served more than the original sentence of four years and should be released from CSP. Therefore, we remand to the circuit court for an order consistent with this opinion.

### III.

Lastly, the State contends that Bennett's failure to raise this argument in his first CSP violation hearing results in a waiver of his right to raise it in the current CSP violation hearing. The issue of waiver was raised but not ruled upon below, and we decline to address the issue. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 420, 526 S.E.2d 716, 723 (2000) (holding when reversing a lower court's decision it is within an appellate court's discretion as to whether to address any additional sustaining grounds); *see also Gecy v. Bagwell,* 372 S.C. 237, 243–44, 642 S.E.2d 569, 572 (2007) (declining to address an additional sustaining ground); *and Vaught v. A.O. Hardee & Sons, Inc.,* 366 S.C. 475, 485, 623 S.E.2d 373, 378 (2005) (reversing the lower court and declining to discuss additional sustaining grounds).

For the foregoing reasons, Bennett's CSP revocation is **REVERSED AND REMANDED.**

BEATTY, and WILLIAMS, JJ., concur.