663 S.E.2d 15

The STATE, Respondent,

v.

Leroy McGRIER # 2, Appellant.

No. 26489.

Supreme Court of South Carolina.

Heard Feb. 21, 2008.
Refiled June 23, 2008.

322

Appellate Defender LaNelle C. DuRant, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, and Ernest Charles Grose, Jr., of Greenwood, for Appellant.

John Benjamin Aplin, of SC Department of Probation Parole and Pardon, of Columbia, for Respondent.

Justice BEATTY.

In this direct appeal, Leroy McGrier challenges the circuit court's order revoking six months for violating the conditions of the Community Supervision Program ("CSP"). McGrier contends the CSP statute, specifically section 24–21–560(D) of the South Carolina Code, is unconstitutional given a revocation from the CSP resulted in the imposition of a greater sentence than his original sentence without the benefit of the requisite constitutional protections. After we issued our original opinion reversing the decision of the circuit court, the State petitioned for rehearing. We deny the petition for rehearing, withdraw our original opinion, and substitute it with this opinion which corrects non-substantive scrivener's errors.

## FACTUAL/PROCEDURAL HISTORY

On November 16, 1999, McGrier pleaded guilty to two counts of distribution of crack cocaine (third offense). The circuit court judge sentenced McGrier to three years imprisonment on each count. The sentences were to be served concurrently.

On May 4, 2002, after serving eighty-five percent of the original term of imprisonment,[1] McGrier was released pursu-

---

1. Section 24–13–150(A) of the South Carolina Code provides in pertinent part:

(A)Notwithstanding any other provision of law, except in a case in which the death penalty or a term of life imprisonment is imposed, a prisoner "convicted of a no parole" offense as defined in Section 24–13–100 and sentenced to the custody of the Department of Corrections, including a prisoner serving time in a local facility pursuant to a designated facility agreement authorized by Section 24–3–20, is not eligible for early release, discharge, or community supervision as provided in Section 24–21–560, *until the prisoner has served at least eighty-five percent of the actual term of imprisonment imposed.* This

ant to section 24–21–560 [2] of the South Carolina Code to the CSP of the South Carolina Department of Probation, Parole, and Pardon Services (the Department). The ending date of McGrier's participation in the CSP was set for May 3, 2004.

On February 23, 2004, McGrier appeared before Circuit Court Judge Wyatt T. Saunders for a revocation hearing. After finding McGrier willfully violated the terms of the CSP, Judge Saunders revoked the CSP and ordered that McGrier be remanded to the custody of the South Carolina Department of Corrections for a period of four months. [3] After serving this

---

percentage must be calculated without the application of earned work credits, education credits, or good conduct credits, and is to be applied to the actual term of imprisonment imposed, not including any portion of the sentence which has been suspended.

S.C.Code Ann. § 24–13–150(A) (2007) (emphasis added). Distribution of crack cocaine, third offense, has been designated as a "no parole offense." S.C.Code Ann. § 24–13–100 (2007).

2. Section 24–21–560(A) provides in relevant part:

(A) Notwithstanding any other provision of law, except in a case in which the death penalty or a term of life imprisonment is imposed, any sentence for a "no parole offense" as defined in Section 24–13–100 must include any term of incarceration and completion of a community supervision program operated by the Department of Probation, Parole, and Pardon Services. No prisoner who is serving a sentence for a "no parole offense" is eligible to participate in a community supervision program until he has served the minimum period of incarceration as set forth in Section 24–13–150.

S.C.Code Ann. § 24–21–560(A) (2007).

3. Sections 24–21–560(C) and (D) of the South Carolina Code provide in relevant part:

(C) If the department determines that a prisoner has violated a term of the community supervision program and the community supervision should be revoked, a probation agent must initiate a proceeding in General Sessions Court. The proceeding must be initiated pursuant to a warrant or a citation issued by a probation agent setting forth the violations of the community supervision program. The court shall determine whether:

(1) the terms of the community supervision program are fair and reasonable;

(2) the prisoner has complied with the terms of the community supervision program;

(3) the prisoner should continue in the community supervision program under the current terms;

(4) the prisoner should continue in the community supervision program under other terms and conditions as the court considers appropriate;

sentence, McGrier was again released to CSP on June 23, 2004, and assigned a supervision ending date of June 22, 2006.

On April 11, 2005, McGrier appeared before Judge Saunders for a CSP revocation hearing. At the conclusion of the hearing, Judge Saunders found McGrier had willfully violated the conditions of the CSP. As a result, Judge Saunders revoked CSP, sentenced McGrier to six months imprisonment, and recommended that McGrier participate in the Alcohol Treatment Unit (ATU) while incarcerated. Upon completion of this sentence, McGrier was again released to the CSP on September 30, 2005. On April 3, 2006, McGrier appeared before Judge Saunders for a CSP violation hearing. Finding that McGrier willfully violated the terms of the CSP, Judge Saunders permitted McGrier's continued participation in the CSP but ordered that he be held in jail until he was accepted into an in-patient substance abuse treatment program.

On October 30, 2006, McGrier appeared before Circuit Court Judge J. Cordell Maddox, Jr., for violating the terms of

---

(5) the prisoner has wilfully violated a term of the community supervision program.

If the court determines that a prisoner has wilfully violated a term or condition of the community supervision program, the court may impose any other terms or conditions considered appropriate and may continue the prisoner on community supervision, or the court may revoke the prisoner's community supervision and impose a sentence of up to one year for violation of the community supervision program. A prisoner who is incarcerated for revocation of the community supervision program is not eligible to earn any type of credits which would reduce the sentence for violation of the community supervision program.

(D) If a prisoner's community supervision is revoked by the court and the court imposes a period of incarceration for the revocation, the prisoner also must complete a community supervision program of up to two years as determined by the department pursuant to subsection (B) when he is released from incarceration.

A prisoner who is sentenced for successive revocations of the community supervision program may be required to serve terms of incarceration for successive revocations, as provided in Section 24–21–560(C), and may be required to serve additional periods of community supervision for successive revocations, as provided in Section 24–21–560(D). The maximum aggregate amount of time the prisoner may be required to serve when sentenced for successive revocations may not exceed an amount of time equal to the length of incarceration imposed for the original "no parole offense". The original term of incarceration does not include any portion of a suspended sentence.

S.C.Code Ann. § 24–21–560(C), (D) (2007).

the CSP. After finding that McGrier willfully violated the terms and conditions of the CSP, Judge Maddox revoked McGrier's CSP and sentenced him to ninety days imprisonment. As part of the order, Judge Maddox specified that McGrier would not be awarded time-served credit, good-time credit, or work credit. McGrier appealed this order to the Court of Appeals.

On January 27, 2007, McGrier was released from the Department of Corrections to the CSP with a supervision ending date of January 26, 2009. On February 6, 2007, McGrier was served with an arrest warrant in which it was alleged that he violated the terms and conditions of the CSP by failing to: report since his release date of January 27, 2007; report to be placed on an electronic monitoring device; and follow the advice and instructions of his probation agent.

Based on these alleged violations, McGrier appeared before Circuit Court Judge Kenneth G. Goode on April 2, 2007, for a CSP revocation hearing. At the hearing, McGrier, who was represented by counsel, contended he should be released from the CSP because "his [original] sentence has been satisfied by the earlier revocation." In support of this argument, McGrier primarily relied on Justice Pleicones' dissent in *State v. Mills,* 360 S.C. 621, 602 S.E.2d 750 (2004), to challenge the constitutionality of section 24–21–560(D). Ultimately, Judge Goode rejected this argument and found that McGrier had willfully violated the terms and conditions of the CSP. As a result, Judge Goode revoked McGrier's CSP and sentenced him to a six-month term of imprisonment. McGrier appeals from this order.

## DISCUSSION

McGrier asserts the circuit court judge erred in finding section 24–21–560(D) constitutional. Because a revocation under the CSP statute can result in a sentence that exceeds the original sentence, McGrier contends he is entitled to the protections afforded all criminal defendants. Specifically, he claims his sentence was increased without the benefit of the right to be informed of the charges against him, the right to counsel, and the right to a jury trial. Given that the revoca-

tion procedure under the CSP statute does not provide for these rights; McGrier claims the statute is unconstitutional.

In support of this argument, McGrier primarily relies on Justice Pleicones' dissent in *State v. Mills*, 360 S.C. 621, 602 S.E.2d 750 (2004). In *Mills*, the defendant pleaded guilty to distribution of crack cocaine, second offense, and was sentenced to six months imprisonment. After serving five months and two days, he entered a CSP which was to continue for two years. After a circuit court judge found the defendant violated the terms of his CSP, the judge revoked the defendant's CSP and sentenced him to five months and seven days pursuant to section 24–21–560(D) of the South Carolina Code. *Id.* at 622, 602 S.E.2d at 751.

Mills appealed the circuit court's order, arguing that section 24–21–560(D) limited his sentence for revocation to the remaining time left on his original sentence for the substantive crime. Mills claimed that because he had served five months and two days, as well as three weeks on a prior revocation, his revocation sentence should not have exceeded five days. Essentially, Mills averred the circuit court misinterpreted section 24–21–560(D) to permit a revocation sentence that was "almost double" his original sentence. *Id.* at 623, 602 S.E.2d at 751. According to Mills, his sentence for revocation could only equal the amount of unserved time remaining on his original sentence.

A majority of this Court rejected Mills' assertion on the ground his claim was not supported by the plain reading of section 24–21–560(D). In reaching this conclusion, the Court stated:

Subsection (C) of § 24–21–560 provides that "the court may revoke the prisoner's community supervision and impose a sentence of up to one year for a violation of the community supervision program." Subsection (D) then provides that for a *successive* revocation, the prisoner may be sentenced "as provided in [subsection] (C)" *i.e.*, for up to one year, with the limitation that the total time imposed "for successive revocations" *i.e.*, *all* revocations, cannot exceed the length of time of the prisoner's original sentence. Subsection (D) does not provide, as appellant contends, that the sentence for any successive revocation is limited to the

amount of time remaining on the prisoner's original sentence, nor does this statute inevitably result in the "doubling" of a prisoner's sentence.

*Id.* at 624, 602 S.E.2d at 752. Applying the above-outlined reasoning, the Court affirmed the circuit court judge's sentence of five months and seven days on the ground that Mills had served three weeks on his prior revocation and his time for all revocations could not exceed six months. *Id.* at 625, 602 S.E.2d at 752.

Justice Pleicones disagreed with the majority's reading of section 24–21–560, stating that "[t]he majority holds that S.C.Code Ann. § 24–21–560 (Supp.2003) permits an inmate found to have violated the terms of his community supervision (CSP) to serve an *additional sentence,* up to an amount equal to the period of incarceration imposed as part [of] his original sentence." *Id.* at 625, 602 S.E.2d at 752. Justice Pleicones explained, "if the revocation judge is truly imposing a new sentence of up to one year, then the protections afforded all criminal defendants, including but not limited to the right to an indictment, counsel, and a jury, must be afforded her." *Id.* at 625 n. 3, 602 S.E.2d at 752 n. 3. Although Justice Pleicones agreed with the majority's literal interpretation of the statute, he believed such a reading rendered the statute unconstitutional. *Id.* at 626, 602 S.E.2d at 752. In his opinion, Justice Pleicones read the statute "as putting an outside limit on incarceration of twice the period imposed by the trial judge. The outside limit on the total amount of time an inmate could be incarcerated and/or required to participate in the CSP program is the length of the original sentence, that is, the term of incarceration plus any period of suspension." *Id.* at 626, 602 S.E.2d at 753. Based on this analysis, Justice Pleicones found the maximum time Mills "could constitutionally be subjected to incarceration and/or required to participate in the CSP program pursuant to [his original sentence] was six months." Because the six-month period had expired, Justice Pleicones found the circuit court judge erred in reincarcerating Mills. *Id.*

At least facially, *Mills* would require this Court to affirm the circuit court's order in the instant case. Because McGrier has served an aggregate of nineteen months as the result of his CSP revocations, under *Mills,* the circuit court's order was

appropriate given McGrier's additional periods of incarceration have not exceeded his original, thirty-six month sentence. However, we believe this case presents an opportunity for the Court to reconsider its decision in *Mills* in light of several arguments that were not previously raised. *See Mills,* 360 S.C. at 624, 602 S.E.2d at 752 (stating "we emphasize that the only issue before us is the construction of this particular statute and not the wisdom of the CSP statutory scheme as a whole").

Although we believe this Court properly employed the rules of statutory construction in deciding *Mills,* we did not at that time envision the problems that would arise out of a practical application of the decision. Upon further reflection, we believe *Mills* does not effectuate what the Legislature intended by enacting the CSP. We reach this result cognizant of our duty to ascertain the intent of the Legislature and to give it effect so far as possible within constitutional limitations. *Brown v. County of Horry,* 308 S.C. 180, 183, 417 S.E.2d 565, 567 (1992) ("It is a settled rule of statutory construction that it is the duty of the court to ascertain the intent of the Legislature and to give it effect so far as possible within constitutional limitations.").

■ An elementary and cardinal rule of statutory construction is that courts must ascertain and effectuate the actual intent of the Legislature. *Horn v. Davis Elec. Constructors, Inc.,* 307 S.C. 559, 563, 416 S.E.2d 634, 636 (1992); *Browning v. Hartvigsen,* 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992); *see State v. Ramsey,* 311 S.C. 555, 561, 430 S.E.2d 511, 515 (1993) ("In the interpretation of statutes, our sole function is to determine and, within constitutional limits, give effect to the intention of the legislature, with reference to the meaning of the language used and the subject matter and purpose of the statute.").

■ "This Court has long recognized that legislative acts are to be construed in favor of constitutionality and will be presumed constitutional absent a showing to the contrary." *Bailey v. State,* 309 S.C. 455, 464, 424 S.E.2d 503, 508 (1992). " 'It is always to be presumed that the Legislature acted in good faith and within constitutional limits; and this declaration of the Legislature is a conclusive finding of fact and

imports a verity upon its face which cannot be impugned by litigants, counsel, or the courts, but is absolutely binding upon all.'" *Scroggie v. Scarborough,* 162 S.C. 218, 231, 160 S.E. 596, 601 (1931) (quoting *State ex rel. Weldon v. Thomason,* 142 Tenn. 527, 221 S.W. 491, 495 (1920)). "Constitutional constructions of statutes are not only judicially preferred, they are mandated; a possible constitutional construction must prevail over an unconstitutional interpretation." *Henderson v. Evans,* 268 S.C. 127, 132, 232 S.E.2d 331, 333–34 (1977).

 As we read section 24–21–560(B) in light of *Mills,* the continuous two-year term in CSP begins anew each time a participant is released into the program after a period of incarceration. *See* S.C.Code Ann. § 24–21–560(B) (2007) ("A community supervision program operated by the Department of Probation, Parole, and Pardon Services must last no more than two continuous years."). If, as in McGrier's case, there are successive revocations, the two-year period could produce a never-ending cycle of participation in CSP and an incarceration period which would clearly exceed or extend past the originally ordered term of incarceration. *See State v. Bennett,* 375 S.C. 165, 174 n. 6, 650 S.E.2d 490, 495 n. 6 (Ct.App.2007) (discussing the fact that successive CSP revocations resulted in defendant serving seven years, four months, and three days for an original four-year sentence). To read the statute in this manner, as Justice Pleicones' noted in his dissent, would render it unconstitutional in several respects.

Initially, we find a practical application of *Mills* would violate a defendant's procedural due process rights. U.S. Const. amend. XIV, § 1; S.C. Const. art. I, § 3 (No person shall be deprived of life, liberty, or property without due process of law.). Here, the imposition of a sentence which exceeds the defendant's original term of incarceration involves a situation where the defendant has not received notice that the terms of his original sentence would be modified and a greater punishment imposed. *See State v. Allen,* 370 S.C. 88, 97, 634 S.E.2d 653, 657 (2006) (" 'It is an essential component of due process that individuals be given fair warning of those acts which may lead to a loss of liberty. This is no less true whether the loss of liberty arises from a criminal conviction or the revocation of probation ... [W]here the proscribed acts are not criminal, due process mandates that [a probationer or

parolee] cannot be subjected to forfeiture of his liberty for those acts unless he is given prior fair warning.' " (quoting *U.S. v. Dane,* 570 F.2d 840, 843–44 (9th Cir.1977))); *Hord v. Commonwealth,* 450 S.W.2d 530, 531–32 (Ky.1970) ("Due process of law . . . must be followed to insure a valid conviction of [a defendant's] felonious charge. Due process does not contemplate that months or years later his 'trial' may be opened and a greater punishment imposed.").

Although McGrier was on notice by the terms of the statute that the completion of the CSP was a requirement of his originally-imposed sentence,[4] he would not have been aware that his participation in this program could potentially be in perpetuity. *See State v. Dawkins,* 352 S.C. 162, 167, 573 S.E.2d 783, 785 (2002) (finding defendant's five-year probation sentence was discharged after he successfully completed a community supervision program pursuant to section 24–21–560(E) of the South Carolina Code); *State v. Scott,* 351 S.C. 584, 590, 571 S.E.2d 700, 703 (2002) (holding, pursuant to section 24–21–560 of the South Carolina Code, defendant was required to participate in CSP and not be placed on probation even though he "maxed out" his active sentence through good-conduct credits given defendant had not served his entire active term of incarceration until he **completed** a CSP). Conceivably, had McGrier been aware of the potential sentencing consequences, he may not have decided to plead guilty.

Furthermore, we believe a literal interpretation of the CSP statute, as in *Mills,* would improperly permit a CSP violation to become a separate and distinct criminal offense from that which a defendant was convicted without the benefit of the requisite Sixth Amendment constitutional protections.

■■ "The Sixth Amendment rights to notice, confrontation, and compulsory process guarantee that a criminal charge may be answered through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence." *State v.*

---

4. Section 24–21–560(E) of the South Carolina Code provides:

(E) A prisoner who successfully completes a community supervision program pursuant to this section has satisfied his sentence and must be discharged from his sentence.

S.C.Code Ann. § 24–21–560(E) (2007).

*Schmidt,* 288 S.C. 301, 303, 342 S.E.2d 401, 402 (1986). "These basic rights are applicable to the states through the due process clause of the Fourteenth Amendment." *Id.* "The Amendment essentially 'constitutionalizes' the right to present a defense in an adversary criminal trial." *Id.*

■ It is undisputed that neither McGrier nor other CSP violators have been afforded these protections. To contend, as does the Department, that the Sixth Amendment protections are inapplicable to the revocation of CSP because it does not involve a criminal prosecution would be a matter of semantics that minimizes or essentially ignores the consequences of a revocation. Our United States Supreme Court has repeatedly held that, "under the Sixth Amendment, any fact that exposes a defendant to a greater potential sentence must be found by a **jury,** not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." *Cunningham v. California,* 549 U.S. 270, 127 S.Ct. 856, 863–64, 166 L.Ed.2d 856 (2007) (emphasis added). Although McGrier, and other similarly situated defendants, are not in actuality being convicted for a second time, they are being given an additional sentence for violating the terms of CSP. Because CSP is a collateral consequence of a conviction for a "no-parole offense," revocations for successive CSP violations should not extend or exceed the term of incarceration that was originally ordered for the underlying offense. *Jackson v. State,* 349 S.C. 62, 64, 562 S.E.2d 475, 475 (2002) (holding participation in CSP is a collateral consequence of sentencing).

As illustrated by the foregoing, we believe a practical application of our decision in *Mills* renders the CSP statute unconstitutional. Moreover, in our view, the purpose of the CSP statute is to continue supervision during the remaining term of the original sentence. Because the CSP program is a more stringent program than traditional probation, we believe the Legislature did not intend for this form of supervision to have the effect of increasing an inmate's original sentence for a "no parole offense." *See Dawkins,* 352 S.C. at 167, 573 S.E.2d at 785 ("The CSP is a more stringent, closely monitored form of supervision than normal probation. Even considering Part E in the context of the statute as a whole, we believe the legislature intended mandatory participation in the

CSP to serve as a more rigorous term of probation for those convicted of no-parole offenses, in lieu of normal probation.").

Therefore, to effectuate the intent of the Legislature and remain within the confines of constitutional limitations, we have decided to change our position regarding an interpretation of the following statutory language:

The maximum aggregate amount of time the prisoner may be required to serve when sentenced for successive revocations may not exceed an amount of time equal to the length of incarceration imposed for the original "no parole offense." The original term of incarceration does not include any portion of a suspended sentence.

S.C.Code Ann. § 24–21–560(D) (2007). We now read this language as limiting the total amount of time an inmate could be incarcerated after a CSP revocation to be the length of the remaining balance of the sentence for the "no parole offense." Based on this interpretation, a circuit court may not impose a sentence for a CSP revocation that would result in an inmate being incarcerated for an aggregate period of time that extended beyond the unsuspended portion of the original sentence. Thus, assuming an inmate has served at least eighty-five percent of the unsuspended portion of his original sentence, an inmate whose CSP is revoked is limited to serving an amount of time equal to the remaining fifteen percent balance of this sentence. We believe this construction preserves the presumed validity and constitutionality of the CSP statute as mandated by our rules of statutory construction. *Cf. Thomas v. State,* 838 So.2d 701, 702 (Fla.Dist.Ct.App.2003) (holding sentence of incarceration that exceeded suspended portion of previously imposed sentence of incarceration, which resulted from violation of community control, was illegal).

Applying our holding to the facts of the instant case, we find the circuit court erred in reincarcerating McGrier given he has served eighty-five percent of the original, three-year term of imprisonment and has served an aggregate of nineteen months as a result of the CSP revocations. Accordingly, the decision of the circuit court is

**REVERSED.**

TOAL, C.J., MOORE, WALLER and PLEICONES, JJ., concur.