701 S.E.2d 53

**The STATE, Respondent,**

v.

**Dana Eugene LANIER, Appellant.**

**No. 4751.**

Court of Appeals of South Carolina.

Submitted Oct. 1, 2010.

Decided Oct. 13, 2010.

Appellate Defender LaNelle C. DuRant, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Senior Assistant Attorney General Harold M. Coombs, Jr., all of Columbia; and Solicitor Kevin S. Brackett, of York, for Respondent.

PER CURIAM.

Dana Eugene Lanier appeals his conviction for escape, arguing the trial court erred in failing to direct a verdict where Appellant was indicted for violating section 24–13–410 of the South Carolina Code (2007) and the indictment made no reference to section 24–3–50 of the South Carolina Code (2007). We affirm.[1]

## FACTS

In February 2006, Lanier, an inmate at the Catawba Correctional Institution (Catawba), began participating in the prison's work release program. Lanier attended a work release orientation and signed a community employment agreement prohibiting him from leaving his place of employment unless authorized by the warden and informing him he could be charged with escape if he did so. In May 2006, Lanier began working at Wise Masonry and Construction as a brick mason. On July 1, 2006, a City of York police officer detained Lanier at the residence of Lanier's sister after the prison reported Lanier missing from the work site and the prison. Subsequently, Lanier was charged with escape in violation of section 24–13–410. The indictments do not reference section 24–3–50.[2]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

2. Section 24–13–410(A) states "it is unlawful for a person, lawfully confined in prison ... to escape, [or] to attempt to escape." S.C.Code Ann. § 24–13–410(A) (2007). Section 24–3–50 states prisoners may be

At trial, Ronald Wiseman, the owner of Wise Masonry and Construction, testified he hired Lanier from the Catawba prison work release program. Wiseman explained foreman Benny Hewlett was in charge of Lanier and brought Lanier to and from various work sites in York County. Wiseman stated his construction company was not working at the residence of Lanier's sister, and Lanier was not authorized to be there. Wiseman testified the prison contacted him on July 1, 2006, when Lanier did not return to Catawba. Wiseman admitted he later discovered Hewlett had taken Lanier off the work site on prior occasions, but stated Hewlett no longer worked for his company.

Lieutenant Richard Caddell of the City of York Police Department testified he responded to a radio call on July 1, 2006, seeking to locate Lanier. Caddell explained he drove to the residence of Lanier's sister and observed Lanier sitting on the front porch with a beer in his hand. Caddell testified Lanier did not appear to be intoxicated and was cooperative when Caddell detained him.

South Carolina Department of Corrections Investigator Eddie O'Cain testified he transported Lanier back to Catawba shortly after Caddell detained Lanier. O'Cain conducted a five-minute interview with Lanier in which Lanier denied attempting to escape from prison custody. O'Cain testified he also attempted to contact Hewlett after interviewing Lanier, but was unable to locate Hewlett.

After the State rested, Lanier moved for a directed verdict. The trial court denied his motion:

> I find that the evidence ... in the light most favorable to the State if believed by the jury could result in [Lanier] being found guilty of escape. The statute provides that a person lawfully confined in a prison who attempts to escape is guilty of escape, and by extension the section 24–3–50 provides the failure of a prisoner to remain within the extended limits of his confinement constitutes an escape, and that's the issue before this court.

charged with escape under section 24–13–410 if they violate the limits of their designated work release location. *See* S.C. Code Ann. § 24–3–50 (2007).

Lanier testified at trial in his own defense. He explained Hewlett drove him to and from the various work sites and also took him to his sister's home on several occasions. Lanier stated Hewlett took him to his sister's home on July 1 after they completed work at a job site. Hewlett allegedly told Lanier he would be back in an hour or so and left Lanier alone. Lanier testified he became worried after a couple of hours when Hewlett failed to return and attempted to call Hewlett, but Hewlett did not answer his phone. Lanier stated he should have called Catawba prison officials at that point, but "was scared ... and [that] would have gotten [Hewlett] in trouble." Lanier explained he was not attempting to escape from prison custody and would have returned to Catawba if Hewlett had returned, but admitted he did break prison rules by leaving the work site with Hewlett.

Lanier renewed his motion for directed verdict at the close of his case, arguing he was not guilty "under the indictment which references the statute that [he was] charged [with]" because he was not confined in prison at the time the prison official found him. The trial court denied his motion, stating: "My interpretation of the statute is different from counsel [in] that a person on work release is under extended confinement and can escape from extended confinement." The jury found Lanier guilty of escape, and the trial court sentenced him to one year of imprisonment. This appeal followed.

## STANDARD OF REVIEW

"A defendant is entitled to a directed verdict when the [S]tate fails to produce evidence of the offense charged." *State v. Weston,* 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). If there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the appellate court must find the case was properly submitted to the jury. *Id.* at 292–93, 625 S.E.2d at 648. "When reviewing a denial of a directed verdict, this [c]ourt views the evidence and all reasonable inferences in the light most favorable to the [S]tate." *Id.* at 292, 625 S.E.2d at 648.

## LAW/ANALYSIS

Section 24–13–410(A) of the South Carolina Code (2007) states, in pertinent part:

It is unlawful for a person, lawfully confined in prison or upon the public works of a county or while in the custody of a superintendent, guard, or officer, to escape, to attempt to escape, or to have in his possession tools or weapons which may be used to facilitate an escape.

Lanier argues the State did not offer sufficient evidence to prove he was guilty under this statute because when he was charged with escape: (1) he was outside of the prison on work release; (2) he was in the custody of Hewlett and relied on Hewlett to transport him to the prison; and (3) he did not possess any tools or weapons to facilitate an escape. We disagree.

Because no evidence in the record establishes Lanier was lawfully confined upon the public works of a county, in the custody of a prison official, or possessed tools to facilitate an escape, the dispositive issue for purposes of Lanier's directed verdict motion is whether the State failed to provide evidence that Lanier escaped while "lawfully confined in prison." Lanier contends he did not escape or attempt to escape from imprisonment because he was on work release and not on the prison grounds at the time of his escape. No South Carolina case law directly addresses whether a prisoner on work release is considered to be lawfully confined in prison for purposes of a violation of section 24–13–410. Accordingly, in the absence of any controlling case law, we "must ascertain and effectuate the actual intent of the Legislature." *State v. McGrier*, 378 S.C. 320, 328, 663 S.E.2d 15, 19 (2008).

Although section 24–13–410 does not define the phrase "lawfully confined in prison," the extent of a prisoner's lawful confinement in prison for purposes of the work release program is clarified in two other statutes that are part of the same general statutory scheme as section 24–13–410. *See State v. Morgan*, 352 S.C. 359, 366, 574 S.E.2d 203, 206 (Ct.App.2002) ("Statutes must be read as a whole and sections which are part of the same general statutory scheme must be construed together and each given effect, if it can be done by any reasonable construction."). Section 24–3–20 sets forth the applicable features of prison work release programs:

When the director determines that the character and attitude of a prisoner reasonably indicates that he may be

trusted, he may *extend the limits of the place of confinement of the prisoner* by authorizing him to work at paid employment or participate in a training program in the community on a voluntary basis while continuing as a prisoner.

S.C.Code Ann. § 24-3-20(B) (2007) (emphasis added). Section 24-3-50 of the South Carolina Code (2007) provides a penalty for prisoners who fail to remain within the limits of their work release program:

The willful[l] failure of a prisoner to remain within the extended limits of his confinement as authorized by § 24-3-20(B), or to return within the time prescribed to the designated place of confinement, shall be deemed an escape from the custody of the Department of Corrections and punishable as provided in § 24-13-410.

Read together, the legislative intent of sections 24-3-20(B) and 24-3-50 is unambiguous: the lawful confinement of a prisoner in a work release program is extended to the limits of a prisoner's designated work release location, but no further. *See Morgan*, 352 S.C. at 367, 574 S.E.2d at 207 ("When the terms of a statute are clear, the court must apply those terms according to their literal meaning."). Moreover, by incorporating section 24-13-410 into the text of section 24-3-50, our Legislature has expressly provided a punishment of escape under section 24-13-410 for a prisoner who violates the confines of their work release program. Thus, even if the State fails to reference section 24-3-50 in an indictment, for purposes of a directed verdict motion regarding section 24-13-410, the State may offer evidence that a prisoner has left the site of the work release program and has not returned back to the prison to show the prisoner escaped or attempted to escape because the prisoner violated the extended limits of his lawful prison confinement.

This statutory analysis of section 24-13-410 is also consistent with the supreme court's holdings in two other cases involving section 24-13-410. In *State v. Murray*, the defendant was a prisoner at Goodman Correctional Institution who was permitted to leave the confines of the prison for seventy-two hours to visit his wife during Christmas. 273 S.C. 374, 375, 256 S.E.2d 543, 543 (1979). When he did not return to

the prison from his Christmas furlough, he was indicted and convicted for escape.[3] *Id.* at 375, 256 S.E2d at 543. On appeal, the defendant argued "the evidence introduced by the State at trial varied materially from the allegations of the indictment." *Id.* In interpreting the crime of escape, the supreme court considered another section in the statutory code, section 24–3–210 of the South Carolina Code (2007), and held "the evidence introduced by the State established the very crime charged in the indictment" because the "[f]ailure to return from a furlough is deemed an escape by section 24–3–210." *Id.* at 375–76, 256 S.E.2d at 543–44 (quotation marks omitted). In *Bing v. Harvey,* the supreme court came to a similar conclusion in interpreting section 24–13–410 when it held "appellant's escape from lawful pretrial custody violated the statutory offense of escape." 274 S.C. 216, 218, 262 S.E.2d 42, 43 (1980).

Turning to the facts of the case at bar, we find the State offered direct evidence of Lanier's violation of the escape statute. Lanier was lawfully imprisoned at Catawba for a criminal conviction, and the prison extended the limits of Lanier's prison confinement by allowing him to participate in a work release program with Wise Masonry and Construction. On July 1, 2006, Lanier exceeded the limits of his prison confinement and escaped when a police officer found Lanier away from the work site at his sister's residence. Lanier admitted he broke the rules of the work release program when he left with Hewlett from the work site without returning to Catawba. Accordingly, the trial court did not err in denying Lanier's directed verdict motion.

## CONCLUSION

Based on the foregoing, the decision of the trial court is **AFFIRMED.**

---

**3.** Although the case does not cite to the specific statutory section Murray violated, it appears from the text of the indictment quoted in the case that Murray was convicted of a violation of section 24–13–410.