573 S.E.2d 783

**The STATE, Respondent,**

v.

**Larry Dean DAWKINS, Appellant.**

**No. 25558.**

Supreme Court of South Carolina.

Heard June 12, 2002.

Decided Nov. 18, 2002.

Rehearing Denied Dec. 18, 2002.

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Deputy Director for Legal Services Teresa A. Knox, Legal Counsel Tommy Evans, Jr., Legal Counsel J. Benjamin Aplin, all of South Carolina Department of Probation, Parole and Pardon Services, of Columbia, for respondent.

Chief Justice TOAL:

Appellant, Larry Dean Dawkins ("Dawkins"), appeals the circuit court's ruling that his probationary period does not begin to run until after he successfully completes his community supervision program.

## FACTUAL/PROCEDURAL BACKGROUND

Dawkins pled guilty to assault and battery with intent to kill ("ABIK") on February 24, 1999. He was sentenced to five years, *suspended to five years probation upon service of two years*. His sentence began when he was arrested on November 16, 1998. As a condition of his sentence, Dawkins was prohibited from having any contact with the victim or her family. Further, Dawkins was required to pay restitution to the victim and to spend six months in a Restitution Center ("RC") after his release.

In May 2000, the RC refused to accept Dawkins because his ABIK conviction constituted a violent offense. As a result, the requirement that Dawkins spend six months at a RC was deleted. On July 28, 2000, Dawkins was released from prison, after serving 620 days (85%) of his two year sentence, to a community supervision program ("CSP") pursuant to section 24–21–560 of the South Carolina Code.[1] According to the terms of the CSP Certificate issued by the South Carolina Department of Probation, Parole, and Pardon Services ("Department"), Dawkins was required to participate in the CSP for 2 years, until July 27, 2002.[2]

Within the first month of his participation in the CSP, Dawkins violated the terms of the program. Dawkins concedes he violated the terms of the CSP by failing to abide by the electronic monitoring rules, failing to report to his agent as instructed, and failing to follow the advice and instruction of his agent. Specifically, Dawkins moved from his approved residence without telling his CSP agent, left his approved residence while on home detention, and, finally, cut his electronic monitoring bracelet off of his ankle and threw it away.

An administrative hearing was held by the Department on September 8, 2000 to address Dawkins' violations. Based on the testimony of the CSP agent and Dawkins' own admissions mentioned above, the hearing officer concluded that Dawkins' placement in the CSP should be revoked.

---

1. S.C.Code Ann. § 24–21–560(A) (Supp.1998). This section provides, in part:

 [A]ny sentence for a "no parole offense" as defined in Section 24–13–100 must include any term of incarceration and completion of a[CSP] operated by the Department.... No prisoner who is serving a sentence for a "no parole offense" is eligible to participate in a[CSP] until he has served the minimum period of incarceration as set forth in Section 24–13–150.

 ABIK is a no parole offense for which a prisoner must serve at least 85% of his sentence under South Carolina Code Ann. § 24–13–150 before participating in a CSP.

2. Section 24–21–560(B) gives the Department discretion to set the period of time and the terms and conditions of a prisoner's CSP based on guidelines developed by the Director of the Department, but limits the amount of time a prisoner can spend in a CSP to two continuous years. "A [CSP] ... must last no more than two continuous years." S.C.Code Ann. § 24–21–560(B) (Supp.1998).

On October 30, 2000, the circuit court held a hearing to address the hearing officer's recommendation for revocation. Again, Dawkins conceded he had committed the violations, but argued that successful completion of the CSP would satisfy his original five year probation sentence. The State contended, instead, that Dawkins' five year probation sentence was distinct from the time he was required to spend in the CSP, and that his probation would begin when he successfully completed the CSP. Ultimately, the judge agreed with the State. The judge sentenced Dawkins to 1 year in prison for his wilful violation of the terms of the CSP pursuant to section 24–21–560(C) of the South Carolina Code, and found that his probation period would be tolled until his release from the CSP.[3]

Dawkins raised the following issue on appeal: [4]

Did the circuit judge err in ruling that Dawkins' five-year probation sentence is tolled until he successfully completes the CSP?

## LAW/ANALYSIS

 Dawkins argues his five-year probation sentence is discharged upon successful completion of the CSP under section 24–21–560(E).

South Carolina Code section 24–21–560(E) provides, "[a] prisoner who successfully completes a[CSP] pursuant to this section has satisfied his sentence and must be discharged from his sentence." Dawkins argues his five years of probation are part of his "sentence" and, therefore, are discharged by successful completion of the CSP.[5] Dawkins bases his appeal on

---

3. Section 24–21–560(C) provides:

 If the court determines that a prisoner has wilfully violated a term or condition of the [CSP], the court may impose any other terms or conditions considered appropriate and may continue the prisoner on community supervision, or the court may revoke the prisoner's community supervision and impose a sentence of up to one year for violation of the [CSP].

 S.C.Code Ann. § 24–21–560(C) (Supp.1998).

4. This case was set to be argued before the Court of Appeals, but after the parties filed their briefs, it was transferred to this Court.

5. The record does not indicate that Dawkins has completed his CSP successfully. As discussed, Dawkins' CSP was revoked and he was

this section 24–21–560(E) argument, and on the well-settled principle that penal statutes are to be strictly construed against the state and in favor of the defendant. *State v. Blackmon*, 304 S.C. 270, 403 S.E.2d 660 (1991). Dawkins' contends the most reasonable interpretation of the statute is that probation and community supervision run concurrently, and that probation is discharged by completion of the CSP.

In response, the State submits that the section 24–21–560(E) argument is not ripe for review as Dawkins has not completed the CSP.[6] Additionally, the State argues that section 24–21–560(E) must be read in conjunction with section 24–21–560(A), applying its definition of "sentence." Section A provides that "any sentence for a 'no-parole offense' . . . must include any term of incarceration and completion of a[CSP]. . . ." Because the legislature did not mention probation in this definition, the State argues that probation is not part of the sentence that is discharged upon successful completion of the CSP.

As Dawkins points out, section 24–21–560 is penal, and should be construed strictly against the State. *Blackmon*. However, "even though penal statutes are to be strictly construed, 'the canons of construction certainly allow the court to consider the statute as a whole and to interpret its words in light of the context.' " *Rorrer v. P.J. Club, Inc.*, 347 S.C. 560, 568, 556 S.E.2d 726, 730 (Ct.App.2001) (citing *State v. Standard Oil Co. of N.J.*, 195 S.C. 267, 288, 10 S.E.2d 778, 788 (1940)). The Court "does not look merely at a particular clause in which a word may be used, but rather [should look] at the word and its meaning in conjunction with the purpose of the whole statute, and in light of the object and policy of the law." *S.C. Coastal Council v. S.C. State Ethics Comm'n*, 306

---

sentenced to one year of imprisonment in August of 2000 because he violated the terms of his CSP. The record provides no further information regarding Dawkins' current status.

6. The State argues that Dawkins' argument is not ripe because he has not completed the CSP yet, which is a condition to discharge under section 24–21–560(E). Although it is a condition of discharge, we believe the question is ripe now because Dawkins will eventually complete the CSP, and the judge who revoked his CSP in August 2000 included an order that his probation be tolled during his participation in the CSP.

S.C. 41, 44, 410 S.E.2d 245, 247 (1991). Further, the interpretation of a term within a statute "should support the statute and should not lead to an absurd result." *Id.* (citing *Hamm v. S.C. P.S.C.*, 287 S.C. 180, 336 S.E.2d 470 (1985)).

In this case, all parties agree the statutory scheme is convoluted. Construing the statute against the State as we must, however, we believe Part E mandates that the prisoner's entire sentence be discharged, including any residual probation, after he completes the mandatory CSP. The CSP is a more stringent, closely monitored form of supervision than normal probation. Even considering Part E in the context of the statute as a whole, we believe the legislature intended mandatory participation in the CSP to serve as a more rigorous term of probation for those convicted of no-parole offenses, in lieu of normal probation. Accordingly, Dawkins' sentence, including probation, is discharged upon *successful* completion of the CSP.

## CONCLUSION

For the foregoing reasons, we **REVERSE** the circuit court's ruling to the extent that it held Dawkins' probation is tolled during his participation in the CSP.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.