695 S.E.2d 845

**The STATE, Appellant,**

v.

**James Dean PICKLESIMER, Respondent.**

**No. 26831.**

Supreme Court of South Carolina.

Heard April 20, 2010.

Decided July 6, 2010.

Rehearing Denied Aug. 4, 2010.

John Benjamin Aplin, South Carolina Department of Probation, Parole & Pardon Services, of Columbia, for Appellant.

Appellate Defender Robert M. Pachak, South Carolina Commission on Indigent Defense, of Columbia, for Respondent.

Justice HEARN.

The State appeals from the circuit court's discharge of Respondent James Dean Picklesimer's remaining sentence, asserting the court erred in finding Picklesimer had successfully completed his community supervision program (CSP), or alternatively, erred in failing to make a distinction between successful completion of CSP and timing out of CSP supervision due to fulfilling the total available revocation period. We reverse.

## FACTUAL/PROCEDURAL BACKGROUND

Picklesimer pled guilty to second degree criminal sexual conduct (CSC) with a minor and was sentenced to ten years imprisonment, suspended on the service of five years imprisonment and five years of probation.[1] On September 1, 2004, after serving eighty-five percent of his unsuspended sentence, Picklesimer was released from custody and enrolled in the Department of Probation, Parole, and Pardon Services' (De-

---

1. Picklesimer was sentenced on September 14, 2001, but was given credit for fifteen and one-half months time served. Thus, his ten year sentence began June 1, 2000, and the five year unsuspended portion of Picklesimer's sentence expired on June 1, 2005.

partment) CSP.[2]   Thereafter, Picklesimer was charged with violating the terms and conditions of his CSP, his CSP was revoked, and he was remanded to the custody of the Department of Corrections for one year.   After serving the additional year's imprisonment, Picklesimer was again released into the Department's CSP on December 1, 2006.

Following Picklesimer's re-enrollment into the CSP, he was charged with violating the program two additional times; however, each time Picklesimer's CSP was continued by order of the circuit court.   On June 23, 2008, this Court issued its opinion in *State v. McGrier,* 378 S.C. 320, 663 S.E.2d 15 (2008). Therein, the Court revisited its decision in *State v. Mills,* 360 S.C. 621, 602 S.E.2d 750 (2004), and re-examined a circuit court's ability to revoke a defendant's probation and sentence the defendant to further imprisonment over and above the total amount of incarceration time of the original sentence. The Court in *McGrier,* re-interpreting section 24–21–560(D) of the South Carolina Code (2007), found "the total amount of time an inmate [can] be incarcerated after a CSP revocation [is] the length of the remaining balance of the sentence for the 'no parole offense.'" 378 S.C. at 332, 663 S.E.2d at 21.   While this clearly established the outside limit of incarceration as the aggregate original sentence, including any suspended portion, subsequent language in the opinion arguably limited the possible incarceration to only the unsuspended portion of the original sentence.

The Department erroneously read *McGrier* to hold that the circuit court could not impose an additional sentence for CSP revocation that would result in the defendant being incarcerated for an aggregate period of time extending beyond the unsuspended portion of the original sentence.   Based on this interpretation, the Department re-calculated the possible CSP revocation time for each offender still under its jurisdiction, including Picklesimer.   Because his previous CSP revocation imprisonment of one year exceeded the remaining nine months of the unsuspended portion of his sentence, the Department determined Picklesimer could no longer face incarceration for subsequent revocations, and on June 28, 2008, the

---

**2.**   Service of eighty-five percent of his five year sentence equates to Picklesimer having been released nine months early.

State closed Picklesimer's CSP, ostensibly in compliance with *McGrier*. On the same day, the State activated the five-year probation term stemming from the suspended portion of Picklesimer's original sentence.

One month later, the Department issued an arrest warrant charging Picklesimer with violating the terms of the five-year probation. In September of 2008, the Department issued a citation against Picklesimer further charging him with violations of the probation. A probation violation hearing was scheduled in October of 2008, and Picklesimer's counsel, relying on *State v. Dawkins*, 352 S.C. 162, 573 S.E.2d 783 (2002), argued that the pending charges against Respondent should be dropped because he should no longer be on probation. The circuit court continued the violation hearing and accepted memoranda from the parties on the subject.

Following a hearing, the circuit court issued an order finding in favor of Picklesimer, and discharged his remaining sentence and probation. The State filed a motion to reconsider, and thereafter the circuit court issued an order denying the motion and supplementing its original order. The State appealed the circuit court's determination to the court of appeals, and this Court, upon request, certified the case from the court of appeals pursuant to Rule 204(b), SCACR.

## ISSUES

I. Did the circuit court err in finding Picklesimer must be treated as having successfully completed CSP, due to the fact that his inability to finish the program was solely a result of his own actions in violating the terms and conditions of CSP?

II. Did the circuit court err in failing to distinguish between successful completion of CSP and the inability to continue CSP due to maxing out the defendant's incarceration time attributable to CSP revocations?

## LAW/ANALYSIS

### I. Section 24–21–560(D) Revisited

In light of the Department's construction of section 24–21–560(D) in this case, we acknowledge some confusion exists

as to the aggregate amount of time a defendant can be incarcerated and/or required to participate in CSP under a sentence from the same offense. We take this opportunity to clarify the Court's interpretation of section 24–21–560(D).

Section 24–21–560(D) provides in pertinent part:

(D) If a prisoner's community supervision is revoked by the court and the court imposes a period of incarceration for the revocation, the prisoner also must complete a community supervision program of up to two years as determined by the department pursuant to subsection (B) when he is released from incarceration.

A prisoner who is sentenced for successive revocations of the community supervision program may be required to serve terms of incarceration for successive revocations, as provided in section 24–21–560(C), and may be required to serve additional periods of community supervision for successive revocations, as provided in section 24–21–560(D). The maximum aggregate amount of time the prisoner may be required to serve when sentenced for successive revocations may not exceed an amount of time equal to the length of incarceration imposed for the original "no parole offense". The original term of incarceration does not include any portion of a suspended sentence.

. . .

We now definitively state that the "original sentence," as referenced in section 24–21–560(D), includes both the suspended and unsuspended portions of a circuit court's sentence; it is, in fact, the total sentence handed down by the court. Therefore, when a circuit court is faced with a defendant's violation of the Department's CSP or normal probationary term, the court may neither revoke and impose a term of further incarceration, nor lengthen the term of the CSP or probation if that will result in the aggregate period of service extending beyond the end of the term of the original sentence.[3] To interpret the original sentence, as the Department has

---

3. We note that under section 24–21–560(C) of the South Carolina Code (2007), a court may revoke a defendant's CSP and impose a sentence of up to one year's incarceration. Our decision today does not impact upon a court's ability and discretion to impose a one-year revocation sentence for CSP violations, except for circumstances when less than one year remains of the defendant's original sentence. Instead, our

done in this case, would be to virtually eliminate the suspended portion of any sentence.

Additionally, both efficiency and fairness dictate that our clarification today be prospective only, applying to Respondent Picklesimer and to any defendant still under the Department's jurisdiction as of the issuance of this opinion.[4]

## II. Discharge of the Remaining Sentence, Including CSP and Probation

The State asserts the circuit court erred in discharging Picklesimer from his entire remaining sentence, including CSP and residual probation, pursuant to *State v. Dawkins*. The State first assigns error to the circuit court's finding that Picklesimer must be treated as having successfully completed CSP, because in the Department's good faith attempt to comply with *McGrier* and terminate Picklesimer's CSP due to his apparent fulfillment of the available revocation period, the Department effectively deprived him of the opportunity to successfully complete CSP. We agree.

In *Dawkins*, this Court held that probationary terms, and mandatory CSP terms for sentences deriving from "no parole offenses," run concurrently. 352 S.C. at 166–67, 573 S.E.2d at 785. Moreover, it held that under the strict construction of section 24–21–560(E), once a defendant participant of CSP successfully completes the CSP program, the remainder of the defendant's sentence, including any residual probation, would be discharged. *Id.; see also* § 24–21–560(E) ("A prisoner who successfully completes a community supervision program pursuant to this section has satisfied his sentence and must be discharged from his sentence."). The Court, however, because it was unnecessary to the resolution of the case in *Dawkins*, did not define what it meant by successful completion of CSP. *Dawkins*, 352 S.C. at 167, 573 S.E.2d at 785 ("Accordingly, Dawkins' sentence, including probation, is discharged upon *successful* completion of the CSP.") (emphasis in original).

holding sets only an outside time limit on a defendant's aggregate amount of incarceration and/or CSP participation.

4. The Court recognizes that the term of Picklesimer's original sentence, based on our calculations, expired on June 1, 2010.

We now hold "successful completion" of CSP connotes the completion of a maximum of two continuous years of CSP, as mandated by section 24–21–560(B), without any violations or revocations, or a determination by the Department that a defendant has fulfilled his CSP responsibilities prior to two years' service in the program. If the defendant's CSP is revoked for a period due to violations, the CSP term begins anew upon the defendant's release. *See* § 24–21–560(D). However, we add the following caveat that incorporates our clarification of section 24–21–560(D) above: under no circumstances shall a defendant be incarcerated, or forced to participate in mandatory CSP or residual probation, stemming from the same conviction, outside of the time given by the trial judge in the original sentence, which encompasses both the suspended and unsuspended portions of the sentence.

Under this adjusted interpretation, Picklesimer would not have been treated as having successfully completed his CSP because he had not served two continuous years without any violations or revocations of the CSP. Additionally then, Picklesimer's CSP would have continued to run, and he would have been eligible for incarceration due to revocation until the outside time limit of his original sentence, June 1, 2010, or until he successfully completed his CSP.

Moreover, this definition of successful completion is entirely reconcilable with this Court's holding in *Dawkins*. If a defendant is sentenced to a term including both a suspended and unsuspended portion, once the unsuspended portion has been served, or eighty-five percent of which has been served, the defendant will be released into the Department's CSP or normal probation program. If the defendant is enrolled and thereafter successfully completes a CSP according to the definition expressed above, under *Dawkins*, the defendant's sentence will be discharged, including any residual probation. If the defendant is required to enroll in normal probation upon initial release, rather than CSP, the probationary term will continue to run until the end of the original sentence.

The State next contends the circuit court erred in finding no distinction between successful completion of a CSP program and the inability to continue CSP due to a defendant reaching the maximum allowable incarceration time attributable to CSP

revocations. Based on our clarification and definition of successful completion above, the State's contention is rendered moot, as the scenario that occurred in Picklesimer's case, under the erroneous interpretation of section 24–21–560(D), is no longer a possibility. More specifically, because the Court finds that the original sentence encompasses both the suspended and unsuspended portions of the sentence, coupled with our pronouncement in *Dawkins* that CSP and normal probation run concurrently, then a defendant will either successfully complete his CSP, or continue in CSP due to violation revocations until the end of the original sentence, at which time the sentence will have been fulfilled. As a result, the problem of fulfilling the maximum allowable incarceration time prior to the end of a defendant's original sentence is no longer a temporal possibility. *See Mathis v. South Carolina State Highway Dep't*, 260 S.C. 344, 195 S.E.2d 713 (1973) (stating when there remains no actual controversy, this Court will not pass on moot and academic questions or render judgment which will have no practical effect).

Based on the foregoing, the judgment of the circuit court is **REVERSED.**

TOAL, C.J., PLEICONES and KITTREDGE, JJ., concur. BEATTY, J., concurring in a separate opinion.

Justice BEATTY, concurring in a separate opinion.

I fully concur in the majority's opinion and write separately to further clarify *McGrier*.

It is important to recognize that the sentence in *McGrier* was a no parole *straight sentence* of three years, *not* a *split sentence*. No part of McGrier's sentence was suspended; therefore, the *McGrier* decision did not involve a CSP incarceration as a result of a probation revocation.

McGrier initially served eighty-five percent of his no parole sentence and was released to CSP. He failed to successfully complete CSP and was re-incarcerated multiple times. The *McGrier* decision determined that the total period of incarceration for McGrier's CSP violations could not exceed the remaining fifteen percent of his sentence. The *McGrier* opinion used the phrase "unsuspended portion" because the remaining

fifteen percent was in fact unsuspended. Although McGrier was released after having served eighty-five percent of his sentence, good time credits could not be used to eliminate the availability of the unsuspended fifteen percent for CSP purposes. *See* S.C.Code Ann. § 24–13–210(F) (2007) ("No credits earned pursuant to this section may be applied in a manner which would prevent full participation in the Department of Probation, Parole, and Pardon Services' prerelease or community supervision program as provided in Section 24–21–560.").

Picklesimer received a split sentence of ten years suspended to five years and five years probation. As a result, Picklesimer had five years and nine months left on his sentence which could have been used to successfully complete CSP. The nine months good time credit earned on his initial five years active sentence is effectively nullified pursuant to section 24–13–210(F) of the South Carolina Code.