763 S.E.2d 622

**The STATE, Respondent/Appellant,**

v.

**Anthony K. BLAKNEY, Appellant/Respondent.**

**Appellate Case No. 2012–207286.**

**Appellate Case No. 2012–212966.**

**No. 5266.**

Court of Appeals of South Carolina.

Heard June 2, 2014.

Decided Aug. 20, 2014.

Rehearing Denied Oct. 23, 2014.

Chief Appellate Defender Robert M. Dudek, of Columbia, for Appellant/Respondent.

Tommy Evans Jr., South Carolina Department of Probation, Parole and Pardon Services, of Columbia, for Respondent/Appellant.

GEATHERS, J.

These consolidated appeals involve two sentencing determinations related to violations of a two-year community supervision program (CSP) administered by Respondent/Appellant, the South Carolina Department of Probation, Parole and Pardon Services (Department). Appellant/Respondent, Anthony K. Blakney, seeks review of the sentence imposed by the circuit court for his April 2011 CSP violations. The circuit court (hereinafter, "the first CSP judge") revoked Blakney's community supervision, gave him credit for prison time served,[1] and required him to begin a new two-year CSP.

---

1. Blakney was arrested for his April 2011 CSP violations in May 2011, and the first CSP judge sentenced him in January 2012.

Blakney argues he was no longer subject to community supervision because he had satisfied the terms of the original sentence for his first degree burglary conviction, which was fifteen years, suspended on the service of thirty months. Blakney contends once he served an aggregate amount of thirty months in prison for his burglary conviction and subsequent CSP violations, he could no longer be imprisoned for successive CSP revocations or be required to participate in a CSP.

The Department appeals an order issued by the circuit court ("the second CSP judge") after a revocation hearing relating to CSP violations allegedly committed by Blakney in April 2012. The second CSP judge did not consider the alleged violations. Rather, he concluded Blakney had satisfied the terms of his burglary sentence when he completed thirty months of imprisonment and, thus, Blakney was no longer subject to community supervision. We affirm the first CSP judge's ruling, reverse the second CSP judge's order, and remand for a new hearing on the violations allegedly committed by Blakney in April 2012.

## FACTS/PROCEDURAL HISTORY

■ In 2008, Blakney was convicted of first degree burglary, a "no parole offense." [2] On November 6, 2008, the sentencing judge imposed on Blakney the following sentence:

[T]he Defendant is committed to the ... **State Department of Corrections** ... for a determinate term of *15* ... years ... and/or to pay a fine of $—— provided that upon the service of *30* ... months ... and/or payment of $——; plus costs and assessments as applicable[ ]; the balance is sus-

---

2. S.C.Code Ann. § 24–13–100 (2007) ("For purposes of definition under South Carolina law, a 'no parole offense' means a class A, B, or C felony or an offense *exempt from classification as enumerated in Section 16–1–10(d), which is punishable by a maximum term of imprisonment for twenty years or more."* (emphasis added)); S.C.Code Ann. § 16–1–10(D) (Supp.2013) (listing first degree burglary as exempt from classification under subsections (A) and (B) of section 16–1–10); S.C.Code Ann. § 16–11–311(B) (2003) (setting forth the maximum sentence for first degree burglary as life imprisonment). Section 24–21–560(A) of the South Carolina Code (2007) requires an individual convicted of a "no parole offense" to complete a CSP operated by the Department after his release from prison.

pended with **probation** for —— months/years and subject to South Carolina Department of Probation, Parole and Pardon Services standard conditions of probation, which are incorporated by reference.

(emphases in original).[3] The Sentence Sheet indicates the sentencing judge gave Blakney credit for time served—Blakney had been in prison since March 23, 2008.

On April 30, 2010, Blakney was released from prison and placed on two years of community supervision.[4] On November 3, 2010, Blakney was arrested for violating the terms of his CSP. After a revocation hearing on February 25, 2011, the first CSP judge revoked Blakney's community supervision but gave him credit for time served, which was three months and fifteen days, and released him. At this point, Blakney began a new two-year CSP.[5]

---

3. At oral argument in this appeal, counsel for the Department offered a possible explanation for the sentencing judge's failure to impose a term of probation: In *State v. Dawkins*, 352 S.C. 162, 166–67, 573 S.E.2d 783, 785 (2002), our supreme court held that a term of probation runs concurrently with a mandatory CSP term for a sentence deriving from a "no parole offense." Section 24–21–560(E) of the South Carolina Code provides that a defendant who successfully completes a CSP has satisfied his sentence and must be discharged from his sentence. Therefore, a defendant's completion of his CSP term discharges any residual probation, *Dawkins*, 352 S.C. at 167, 573 S.E.2d at 785, and, thus, circuit judges may have found it futile to add a term of probation to sentences for no parole offenses.

4. A CSP may last up to two continuous years. S.C.Code Ann. § 24–21–560(B). Further, section 24–13–150(A) (2007) requires the individual to serve "at least eighty-five percent of the actual term of imprisonment imposed" in order to be eligible for a CSP. The statute also states: "This percentage ... is to be applied to the actual term of imprisonment imposed, not including any portion of the sentence [that] has been suspended." Here, the Department of Corrections apparently determined that Blakney had served eighty-five percent of the unsuspended portion of his sentence, i.e., eighty-five percent of thirty months.

5. Once an individual's community supervision is revoked, he must begin the required CSP term anew. *See* S.C.Code Ann. § 24–21–560(D) (Supp.2013) ("If a prisoner's community supervision is revoked ... and the court imposes a period of incarceration for the revocation, the prisoner also must complete a community supervision program of up to two years as determined by the department pursuant to subsection (B) when he is released from incarceration.").

On May 13, 2011, Blakney was arrested for additional CSP violations. On December 9, 2011, the first CSP judge conducted another revocation hearing. At this hearing, counsel for Blakney argued that Blakney should not be sanctioned for CSP violations because he had already completed the unsuspended portion of his sentence, i.e., thirty months of imprisonment. In response, the Department argued that, under *State v. Picklesimer*,[6] the limit for the aggregate amount of service upon successive CSP revocations is the term of the original sentence, i.e., in Blakney's case, the full fifteen years. Counsel for Blakney asserted that this case is distinguishable from *Picklesimer* because the sentencing judge had not imposed a term of probation as part of Blakney's sentence.

The first CSP judge took the issue under advisement. After a hearing on January 19, 2012, the first CSP judge revoked Blakney's community supervision, gave him credit for time served, and released him to begin a new two-year CSP. Blakney's appeal followed.

On April 27, 2012, Blakney was arrested once again for CSP violations. After conducting a revocation hearing on August 17, 2012, the second CSP judge issued an order finding Blakney had satisfied the terms of the original sentence for his burglary conviction and was no longer subject to community supervision.[7] The Department's appeal followed. Although the second CSP judge's order effectively nullified the first CSP judge's ruling requiring Blakney to begin a new CSP, Blakney did not withdraw his appeal of the first CSP judge's ruling. After the Department appealed the second CSP judge's order, its appeal was consolidated with Blakney's appeal.

## ISSUE ON APPEAL

Has Blakney satisfied the terms of his original sentence such that he is no longer subject to community supervision?

---

6. 388 S.C. 264, 268–69, 695 S.E.2d 845, 848 (2010).

7. During the revocation hearing, the second CSP judge indicated there was no need to place Blakney's CSP violations on the record because "he shouldn't be here."

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the circuit court's factual findings unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

Section 24–21–560(D) of the South Carolina Code states, in pertinent part:

If a prisoner's community supervision is revoked by the court and the court imposes a period of incarceration for the revocation, *the prisoner also must complete a community supervision program of up to two years as determined by the department pursuant to subsection (B)* when he is released from incarceration.

A prisoner who is sentenced for successive revocations of the community supervision program may be required to serve terms of incarceration for successive revocations, as provided in Section 24–21–560(C), and may be required to serve additional periods of community supervision for successive revocations, as provided in Section 24–21–560(D). *The maximum aggregate amount of time a prisoner may be required to serve when sentenced for successive [CSP] revocations may not exceed an amount of time equal to the length of incarceration imposed limited by the amount of time remaining on the original "no parole offense[.]" [ ] The prisoner must not be incarcerated for a period longer than the original sentence.* The original term of incarceration does not include any portion of a suspended sentence.

(emphases added).

In *State v. McGrier,* 378 S.C. 320, 331, 663 S.E.2d 15, 21 (2008), our supreme court held that revocations for successive CSP violations "should not extend or exceed the term of incarceration that was originally ordered for the underlying offense." The court explained that section 24–21–560(D) limits "the total amount of time an inmate could be incarcerated after a CSP revocation to . . . the length of the remaining balance of the sentence for the 'no parole offense.'" *Id.* at 332, 663 S.E.2d at 21.

Subsequently, in *Picklesimer*, our supreme court applied section 24–21–560(D) to a ten-year sentence that had been suspended on the service of five years' imprisonment and five years' probation. 388 S.C. at 265, 695 S.E.2d at 846. The court held the "original sentence," as referenced in section 24–21–560(D), included "both the suspended and unsuspended portions of a circuit court's sentence." *Id.* at 268, 695 S.E.2d at 848. The court explained "it is, in fact, the total sentence handed down by the court." *Id.*

■ Here, the thirty months served by Blakney was the unsuspended portion only. The total sentence for Blakney's burglary conviction was fifteen years. Therefore, the aggregate amount of time Blakney is required to serve in prison or participate in a CSP may not exceed fifteen years. *See id.* at 270, 695 S.E.2d at 848–49 ("[U]nder no circumstances shall a defendant be incarcerated, or forced to participate in mandatory CSP or residual probation, stemming from the same conviction, outside of the time given by the trial judge in the original sentence[.]"). In other words, to satisfy his burglary sentence, Blakney must either *successfully complete* a CSP or continue in a CSP due to violation revocations until the end of the fifteen-year sentence.[8] *See* S.C.Code Ann. § 24–21–560(E) ("A prisoner who successfully completes a community supervision program pursuant to this section has satisfied his sentence and must be discharged from his sentence."); *Picklesimer*, 388 S.C. at 270, 695 S.E.2d at 848 (" '[S]uccessful completion' of CSP connotes the completion of a maximum of two continuous years of CSP, as mandated by section 24–21–560(B), without any violations or revocations, or a determination by the Department that a defendant has fulfilled his CSP

---

8. In determining the date that the defendant's original sentence expired, the *Picklesimer* court gave credit to the defendant for not only the time he served in prison but also the time he participated in a CSP. *See Picklesimer*, 388 S.C. at 268 n. 3, 695 S.E.2d at 848 n. 3 ("[O]ur holding sets only an outside time limit on a defendant's aggregate amount of incarceration and/or CSP participation."); *id.* at 265 n. 1, 695 S.E.2d at 846 n. 1 (noting the defendant's original ten-year sentence had begun on June 1, 2000); *id.* at 269 n. 4, 695 S.E.2d at 848 n. 4 (recognizing that the term of the defendant's original sentence had expired on June 1, 2010); *id.* at 270, 695 S.E.2d at 849 (explaining that the defendant would be eligible for incarceration due to CSP revocations "until the outside time limit of his original sentence, June 1, 2010, or until he successfully completed his CSP").

responsibilities prior to two years' service in the program."); *id.* at 271, 695 S.E.2d at 849 ("[A] defendant will either successfully complete his CSP, or continue in CSP due to violation revocations until the end of the original sentence, at which time the sentence will have been fulfilled.").

The second CSP judge found Blakney's circumstances were distinguishable from the circumstances in *Picklesimer.* The second CSP judge reasoned that, unlike the sentence imposed in *Picklesimer,* Blakney's sentence for his burglary conviction did not include a term of probation. However, the existence of a term of probation for the prisoner in *Picklesimer* did not make its holding any less applicable to CSP revocations that do not involve a term of probation. The identification of the "original sentence" employs the same uncomplicated analysis in both situations. We read *Picklesimer's* interpretation of section 24–21–560(D) as applying to all CSP revocations, whether or not the individual subject to a CSP is also subject to a term of regular probation.

■ The dissent expresses concern over the fact that Blakney's original fifteen-year sentence was erroneously suspended.[9] However, this erroneous suspension does not affect our application of section 24–21–560(D), as interpreted in *McGrier* and *Picklesimer,* to the present case. *See McCall v. Finley,* 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987) ("[W]hatever doesn't make any difference, doesn't matter."). First, the suspension of Blakney's sentence is the law of the case, as the State has never sought to correct this error. *Cf. State v. Lee,* 350 S.C. 125, 132–33, 564 S.E.2d 372, 376 (Ct.App.2002) (hold-

---

9. *See* S.C.Code Ann. § 24–21–410 (2007) ("After conviction or plea for any offense, *except a crime punishable by death or life imprisonment,* the judge of a court of record with criminal jurisdiction at the time of sentence may suspend the imposition or the execution of a sentence and place the defendant on probation or may impose a fine and also place the defendant on probation." (emphasis added)); S.C.Code Ann. § 16–11–311(B) ("Burglary in the first degree is a felony *punishable by life imprisonment.* For purposes of this section, "life" means until death. The court, in its discretion, may sentence the defendant to a term of *not less than fifteen years.*" (emphases added)); *State v. Jacobs,* 393 S.C. 584, 589, 713 S.E.2d 621, 624 (2011) ("We find that section 24–21–410 of the South Carolina [C]ode does not give courts the authority to suspend sentences for crimes punishable by death or life imprisonment, and this includes crimes that include lesser sentences than death or life imprisonment.").

ing, in a probation revocation case, that any lack of authority on the part of the sentencing judge to impose a particular sentence on the underlying conviction did not affect the circuit court's subject matter jurisdiction to later proceed with the revocation because the defendant did not challenge the underlying sentence in a motion to reconsider, on direct appeal, or as a defense to the probation revocation proceedings, and, therefore, the underlying sentence was the law of the case). Accordingly, this court does not have the authority to correct the error, and, notwithstanding the dissent's statement to the contrary, it is necessary to reference *Picklesimer's* definition of "original sentence" in applying section 24–21–560(D) to the present case. *See Commander Health Care Facilities, Inc. v. S.C. Dep't of Health & Envtl. Control,* 370 S.C. 296, 303, 634 S.E.2d 664, 667 (Ct.App.2006) (indicating that an issue that is procedurally barred should not be raised sua sponte by an appellate court (citing *State v. Cutro,* 332 S.C. 100, 107, 504 S.E.2d 324, 327 (1998) (Toal, J., dissenting))); *see also Lewis v. Local 382,* 335 S.C. 562, 569 n. 11, 518 S.E.2d 583, 586 n. 11 (1999) ("This Court will not generally raise issues *sua sponte.*"); *State v. Johnston,* 333 S.C. 459, 462, 510 S.E.2d 423, 424 (1999) (concluding that a defendant's challenge to the trial court's sentencing authority did not involve a question of subject matter jurisdiction, and, thus, it could not be raised for the first time on appeal); *Smith v. Phillips,* 318 S.C. 453, 455, 458 S.E.2d 427, 429 (1995) (concluding that this court erred in sua sponte raising an issue concerning the propriety of a jury verdict in a nuisance claim finding liability but no damages).

Further, even if (1) Blakney's sentence had not been suspended, or (2) the suspension of his sentence were allowed by our criminal statutes, fifteen years would still serve as the limit on the aggregate amount of time Blakney may be required to serve in prison or participate in a CSP. *See Picklesimer,* 388 S.C. at 268, 695 S.E.2d at 848 (holding that the term "original sentence," as referenced in section 24–21–560(D), is the total sentence handed down by the court); *id.* at 268–69, 695 S.E.2d at 848 (stating that to interpret "original sentence" as only the unsuspended portion "would be to virtually eliminate the suspended portion of any sentence"); *McGrier,* 378 S.C. at 322, 663 S.E.2d at 16 (applying section 24–21–560(D) to a sentence that had not been suspended).

Therefore, while the State, currently represented by the Department, is barred from arguing that Blakney's fifteen-year sentence was improperly suspended (*see supra; infra dissent*), it is not barred from taking the position that, *in any event*, for purposes of section 24–21–560(D), as interpreted in *McGrier* and *Picklesimer*, the original sentence was fifteen years. In the Department's appellate brief, it took both of these positions.

As to the dissent's statement that the State should honor the representations the Solicitor made to Blakney in plea negotiations, it is not for this court in this case to speculate on the actual representations made by the Solicitor to Blakney, who was represented by counsel when he signed the Sentence Sheet. Further, we disagree with the dissent's suggestion that Blakney should receive special treatment because when he pled guilty he may not have been aware of the aggregate amount of time he could be required to serve in prison or participate in a CSP after successive CSP revocations. *See McGrier*, 378 S.C. at 331, 663 S.E.2d at 21 (stating that community supervision is a collateral consequence of a conviction for a "no-parole offense" and citing *Jackson v. State*, 349 S.C. 62, 64, 562 S.E.2d 475, 475 (2002)); *Jackson*, 349 S.C. at 63–64, 562 S.E.2d at 475–76 (rejecting a post-conviction relief applicant's argument that his guilty plea was involuntary because his trial counsel failed to inform him about mandatory participation in a CSP in advising him whether to plead guilty); *id.* at 64, 562 S.E.2d at 476 (holding that counsel was not ineffective for failing to inform his client about mandatory CSP participation in advising him whether to plead guilty because participation in a CSP is a collateral consequence of sentencing).

Finally, the dissent suggests that if the court interprets Blakney's original sentence as being fifteen years, he will have to serve eighty-five percent of fifteen years in prison. This is not the case. Section 24–13–150(A) requires a "no parole" inmate to serve "at least eighty-five percent of the actual term of imprisonment imposed" in order to be eligible for community supervision. The statute further states: "This percentage . . . is to be applied to the actual term of imprisonment imposed, not including any portion of the sentence [that] has been suspended." Here, Blakney's fifteen-year sentence was

suspended upon the service of thirty months, which is the law of the case (*see supra*). Therefore, section 24–13–150(A) does not require Blakney to go back and serve eighty-five percent of the full fifteen years before he is eligible to participate in a CSP. In any event, the *maximum* time Blakney may be required to serve in prison or participate in a CSP is the term of his original sentence, fifteen years. Of course, Blakney can make all of this go away by simply complying with the terms of his CSP for no more than *two* years. *See* S.C.Code Ann. § 24–21–560(E) ("A prisoner who successfully completes a community supervision program pursuant to this section has satisfied his sentence and must be discharged from his sentence.").

Based on the foregoing, we affirm the first CSP judge's ruling, reverse the second CSP judge's order, and remand for a new hearing on the violations allegedly committed by Blakney in April 2012.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

SHORT, J., concurs.

FEW, C.J., dissenting:

The State and Blakney requested, and the trial court imposed, a sentence we now know was impermissible under law. *See State v. Jacobs*, 393 S.C. 584, 588–89, 713 S.E.2d 621, 623–24 (2011) (holding a sentencing court has no power to suspend the minimum fifteen year sentence for burglary in the first degree because it carries a maximum sentence of life in prison). The law does not provide this court a clear resolution for the dispute that has arisen as to the execution of that sentence. The majority has thoroughly explained its proposed resolution, and I agree with the majority's interpretation of the sentencing statutes. However, I would not resolve this appeal by interpreting the sentencing statutes. Instead, I would hold the State may not argue to a sentencing court that the court has the power to suspend a sentence, and after the court accepts the State's argument and suspends the sentence, turn around and argue, as it has done in this appeal, the sentence may not be suspended. I would hold the State is estopped from taking the position it takes on appeal because it

took precisely the opposite position when it asked the sentencing court to suspend the minimum of fifteen years. *See Auto–Owners Ins. Co. v. Rhodes*, 405 S.C. 584, 597, 748 S.E.2d 781, 788 (2013) ("Judicial estoppel is an equitable concept that prevents a litigant from asserting a position inconsistent with ... one the litigant has previously asserted in the same or related proceeding." (citation omitted)). I would affirm the second CSP judge's order, and find it unnecessary to rule on the appeal from the first CSP judge's order. I respectfully dissent.

Blakney pled guilty on November 6, 2008. At the sentencing hearing, the State recommended Blakney receive a sentence of no more than five years. In doing so, the State asked the sentencing court to suspend the minimum sentence of fifteen years.[10] *See* S.C.Code Ann. § 16–11–311(B) (2003) ("Burglary in the first degree is a felony punishable by .... a term of not less than fifteen years."). In its appellate brief, the State wrote:

> The [State] argues that [Blakney] was not given a thirty month sentence but a fifteen year sentence. For a person to be sentenced to burglary 1st you cannot receive less than fifteen years. The court is obligated to impose the sentence established by the General Assembly. It is clear by the statute the General Assembly did not wish a criminal defendant to receive a sentence less than fifteen years for the offense of burglary 1st.

At oral argument, the State clarified its position on four separate occasions:

> I think the sentence is illegal, your honor.

---

10. Interestingly, fourteen months later, the same Solicitor's office that prosecuted Blakney took the opposite position at the plea hearing in *Jacobs*. *See* 393 S.C. at 586, 713 S.E.2d at 622 ("In January 2010, .... [t]he circuit judge deferred sentencing ... and requested the parties submit memoranda in support of their positions regarding the suspension issue."). The Solicitor in *Jacobs* filed a memorandum arguing, "The State respectfully submits that it is not within the power of a judge to suspend a burglary first[-]degree sentence and that doing so is contrary to the laws of the State of South Carolina." Similarly, the Attorney General argued in its brief on appeal in *Jacobs*, "The trial judge properly determined Appellant's sentence for burglary in the first degree ... cannot be suspended under the plain and unambiguous language of S.C.Code Ann. § 24–21–410."

With all due respect, the sentence is fifteen years.

He would have to serve the eighty-five percent of fifteen years.

I'm taking the position the sentence is fifteen years.

The State is represented on appeal by the general counsel for the Department of Probation, Parole, and Pardon Services, who attempts to escape the inconsistency in the State's positions by arguing the State was represented by a different lawyer—the Solicitor—at the plea hearing. The argument fails. The State's lawyer told the sentencing court it had the power to suspend the minimum sentence, and now the State's lawyer tells this court there is no such power. I would hold the State is bound to accept the sentence it asked for.

Apart from the State's inconsistent positions, I would concur in the result reached by the majority. However, I do not agree that *State v. Picklesimer*, 388 S.C. 264, 695 S.E.2d 845 (2010), applies to this case. In *Picklesimer*, the plea court sentenced the defendant to ten years in prison for criminal sexual conduct with a minor in the second degree, and then suspended the sentence to five years. 388 S.C. at 265, 695 S.E.2d at 846. Section 24–21–410 of the South Carolina Code (Supp.2013) provides the sentencing court the power to suspend sentences when the crime is not "punishable by death or life imprisonment." *See also State v. Thomas*, 372 S.C. 466, 468, 642 S.E.2d 724, 725 (2007) (explaining the power conferred upon the sentencing court under section 24–21–410 "does not extend to offenses where the legislature has specifically mandated that no part of a sentence may be suspended"). Thus, the suspended sentence in *Picklesimer* was proper because the crime did not carry life in prison and the applicable statute did not prohibit a suspended sentence. *See* S.C.Code Ann. § 16–3–655(D)(3) (Supp.2013) ("A person convicted of [criminal sexual conduct with a minor in the second degree] ... must be imprisoned for not more than twenty years in the discretion of the court.").

In Blakney's case, however, the suspended sentence was not proper because the plea court had no power to suspend the sentence. *See Jacobs*, 393 S.C. at 588–89, 713 S.E.2d at 623–24. In my opinion, the suspension of a sentence is not effective when the law forbids the suspension. *See generally*

*Talley v. State,* 371 S.C. 535, 546 n. 6, 640 S.E.2d 878, 883 n. 6 (2007) (Pleicones, J., dissenting) (stating "if in fact the original sentence were unlawful" because a magistrate court had no power to impose probation, "then the suspension would be a nullity and Respondent would be required to serve the original ... sentence.").[11] Therefore, despite the language on the sentencing sheet purporting to suspend the sentence, the sentence given was fifteen years, no portion of which was suspended. Because there was no suspended sentence, it is unnecessary for this court to consider the effect of *Picklesimer.*

My conclusion that Blakney received a fifteen year sentence with no suspension raises a concern as to whether he entered a voluntary plea. The majority's holding that he must serve all fifteen years before he is no longer subject to revocation of his community supervision raises the same concern. The State recommended the plea court sentence Blakney to a maximum of five years in prison. Under *Jacobs* and section 24–21–410, Blakney faced a minimum of fifteen years. The plea court could not have given Blakney correct information about the sentence he faced if the court believed it could suspend his sentence to five years. However, this concern must be addressed in a post-conviction relief (PCR) action. *See Roscoe v. State,* 345 S.C. 16, 21, 546 S.E.2d 417, 419 (2001) (requiring a PCR applicant to demonstrate that but for the erroneous statement from the plea court about the penalty he faced, he would have gone to trial); *Dover v. State,* 304 S.C. 433, 435, 405 S.E.2d 391, 392 (1991) (finding a guilty plea involuntary in part because the defendant did not understand the sentence he faced).

---

11. The *Talley* majority did not reach the point Justice Pleicones addressed in this statement because it was able to resolve the Sixth Amendment right to counsel issue before it by interpreting a *completely suspended* sentence as leaving "absolutely no possibility the defendant will ever be incarcerated for the underlying conviction." 371 S.C. at 545, 640 S.E.2d at 883. Moreover, the magistrate court in *Talley* had the power to suspend the sentence, but the sentence was unlawful because the magistrate court had no authority to impose probation. 371 S.C. at 544, 640 S.E.2d at 882. Our supreme court has not held that a trial court's *partial* suspension of a sentence is effective even when the court has no power to suspend the sentence.

I do not intend to suggest the State did anything improper in arguing to the sentencing court it had the power to suspend a minimum sentence for burglary in the first degree. In fairness to the Solicitor, the 2008 plea occurred when many lawyers and circuit judges interpreted section 16–11–311 to permit suspending the minimum sentence. It was not until 2011 when the supreme court decided *Jacobs* that it became clear the minimum could not be suspended. In fairness to the general counsel for the Department, he is correct under *Jacobs*—Blakney did receive a fifteen year sentence. In fairness to Blakney, however, he should get what was promised—a sentence of no more than five years.

The fact the State did not seek to correct the trial court's error is of no consequence. The State is not aggrieved by the error—Blakney is. In fact, the State now embraces the error and seeks to benefit from it by claiming Blakney's sentence is fifteen years. The issue before us, however, is not a matter of "correcting" the error. This appeal requires us in the first instance to interpret the sentence. In doing so, I would hold the State to the position it took at the sentencing hearing, and find that Blakney can no longer be incarcerated on community supervision for this crime.

As the majority aptly points out, and as I acknowledge, my proposed resolution of this appeal does not fit perfectly with the situation the parties and the sentencing court created. However, the resolution I propose honors a fundamental cornerstone of the administration of criminal justice: participants in the system—defendants in particular—are entitled to expect that the State will stand behind its sentencing recommendations. While the sentencing court is never required to follow a recommendation, when it does so, the State should not be permitted to later claim what it and the court meant was the defendant must receive a *minimum* of three times what it recommended as the maximum. That is precisely what the State has done in this case. The Department of Probation, Parole, and Pardon Services and the Department of Corrections should at least recognize the inconsistency of the positions the State has taken in this case, honor the representations the Solicitor made to Blakney in plea negotiations, and interpret the sentence in such a way that he faces only a one-year revocation if he violates community supervision—not

eighty-five percent of fifteen years. *See* S.C.Code Ann. § 24–21–560(C) (2007) (providing "the court may revoke the prisoner's community supervision and impose a sentence of up to one year for violation of the community supervision program").